UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EVERADO GOMEZ and GLORIA LOPEZ,
individually, and on behalf of all others similarly
situated,

                                Plaintiffs,

                       v.

CARROLL FLATS LLC, MORDECHAI SPIRA
A/K/A MIKE SPIRA, ALBERT BENARROCH
A/K/A ALBERT BENAROSH and A/K/A ALBERT
ABRAHAM and A/K/A ABRAHAM ALBERT and
STEVE SPERA,

                          Defendants.
-------------------------------------------------------------X

Case No.: 22-cv-01493

**CLASS AND
COLLECTIVE ACTION
COMPLAINT**

Representative plaintiffs Everado Gomez ("Gomez") and Gloria Lopez ("Lopez") (collectively, "Plaintiffs" or "Representative Plaintiffs") individually and on behalf of all others similarly situated, upon personal knowledge as to themselves and upon information and belief as to other matters, by their attorneys, RAPAPORT LAW FIRM, PLLC, and MILLER LAW, PLLC, as and for their Complaint against Carroll Flats LLC ("Carroll Flats"), Mordechai Spira a/k/a Mike Spira ("Spira"), Albert Benarroch a/k/a Albert Benarosh and a/k/a Albert Abraham and a/k/a Abraham Albert ("Benarroch"), Steve Spera ("Spera") and all related entities (collectively, "Defendants"), allege:

## PRELIMINARY STATEMENT

**The Nature of Plaintiffs' Claims:**

1.      This action is brought pursuant to the New York Labor Law ("NYLL") Article 19 § 663, 12 New York Codes, Rules and Regulations ("NYCRR"), Part 141 and NYLL Article 6 § 190 *et seq.*, the Fair Labor Standards Act ("FLSA"), and 29 U.S.C. § 207, to recover unpaid overtime wages, minimum wages, and other wages owed to Plaintiffs and similarly situated co-workers – superintendents, porters and other building

maintenance workers – who have worked at apartment buildings owned, controlled and/or operated by Defendants in New York City.

2.      This is a class/collective action, seeking unpaid wages, including minimum wages and unpaid overtime compensation and interest thereon, reimbursement for unlawful deductions, liquidated damages and other penalties, injunctive and other equitable relief and reasonable attorneys' fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206 and 207.

3.      This action further invokes diversity jurisdiction and the supplemental jurisdiction of this Court to consider claims arising under New York Labor Law ("NYLL") (*e.g.*, New York Wage Payment Act; NY Labor Law §§ 191, 193, and 195; 12 N.Y.C.R.R. Part 141-1.9 and 2.10, and Part 142; and NY Labor Law § 215).

**The Spira Enterprise:**

4.      At all relevant times, Defendants were and still are a centrally managed real estate enterprise (hereinafter the "Spira Enterprise") that owns, controls, and manages apartment buildings (the "Spira Buildings") in New York City, and upon information and belief, during the relevant time periods, the Spira Enterprise has employed more than thirty (30) superintendents, porters and handymen.

5.      This Collective and Class Action seeks redress for state and federal wage violations that Defendants, as joint employers, inflicted on superintendents, porters and other maintenance personnel who worked at the Spira Buildings during the applicable FLSA and NYLL statute of limitations periods.

6.      Upon information and belief, during the time period relevant to the Plaintiffs' and Class and Collective Members' causes of action, the Spira Enterprise was controlled by individual defendant Spira, who had the status of joint employer of

superintendents, porters, handymen and other maintenance personnel who worked at the Spira Buildings during the applicable FLSA and NYLL statute of limitations periods.

7.    Spira exercised unified ownership and control over approximately forty-six (46) apartment buildings in New York City through his various title-holding entities, each of which had Spira as its principal, managing member, manager and/or senior officer.

8.    At all relevant times, the Spira Enterprise had a principal place of business at 5014 16th Avenue, Suite 191, Brooklyn, New York (the "16th Avenue Office"), from which it owned, operated and managed the Spira Buildings under the same policies regarding the payment of wages to building maintenance employees.

9.    Upon information and belief, at times relevant to this proceeding, the Spira Enterprise also held itself out as having an address for the conduct of business at 2071 Flatbush Avenue, No. 48, Brooklyn, New York.

10.    Upon information and belief, Spira exercises ownership and control of the Spira Enterprise together with one or more members of his family, including, for example, Steve Spera, who is the designated managing agent of Defendants' buildings located at: 1730 Carroll Street, Brooklyn, NY 11213 (the "Carroll Street Building"); 756 Myrtle Avenue, Brooklyn, NY 11206; and 2100 Westbury Court, Brooklyn, NY.

11.    Upon information and belief, at all relevant times, the Spira Enterprise issued correspondence relating to superintendents and maintenance workers, regardless of the particular building where they are assigned to work, under letterhead listing its address as the 16th Avenue Office.

12.    Upon information and belief, during various periods of time relevant to this complaint, Defendants exercised control of their enterprise through various management companies controlled by Defendants, including, for example, "M and I Management" and "Dime Management," of which Spira is President.

13.     The Spira Enterprise is listed among New York City's "Worst Landlords" on the New York City Public Advocate's annual "Worst Landlord Watchlist."

14.     Upon information and belief, the Spira Enterprise has applied common employment practices, policies and procedures to superintendents, porters and maintenance workers of the Spira Buildings, including, *inter alia*, the Spira Enterprise's practice of willfully refusing to compensate these employees for all hours worked beyond the first forty (40) hours of work per work week.

15.     Building superintendents were required to remain on call at their respective buildings from early morning through late at night but were not paid overtime compensation despite working substantially more than 40 hours per workweek in violation of the FLSA.

16.     Furthermore, the Spira Enterprise had a policy and practice of requiring unlawful deductions from wages, including the Spira Enterprise's requirement that superintendents provide their own tools, without reimbursement by Defendants, used solely for the benefit of the Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry. 12 N.Y.C.R.R. § 141-1.9.

17.     The Spira Enterprise also had a common practice of issuing pay statements to workers that did not comply with the New York Labor Law, including, among other omissions, failing to set forth hours worked and/or identifying the manner in which weekly pay was calculated.

## JURISDICTION AND VENUE

18.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1137 because this case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.  The

Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. §1367.

19.     Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because Defendants transact business and have agents in the Eastern District, and this is the judicial district in which the events giving rise to the claims occurred, Representative Plaintiffs having performed work for Defendants in Brooklyn. Defendants have facilities and employed Plaintiffs and putative Collective and Class Members in this district.

20.     This Court has personal jurisdiction over the Defendants pursuant to New York Civil Practice Law and Rules § 301 in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiffs within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

## THE PARTIES

**Plaintiffs**

**Everado Gomez:**

21.     Gomez is an adult, natural person who resides in the City of New York, County of Kings and State of New York.

22.     Beginning in or about 2011 to the present, Gomez has handled maintenance, cleaning and repair work at Defendants' building located at the Carroll Street Building.

23.     The Carroll Street Building is a six-floor, 84-unit apartment building constructed in 1928.

24.     Gomez' duties include, *inter alia*, handling garbage and recyclables, painting, plastering, light plumbing, mopping, changing lights, shoveling snow, handling

apartment turnovers, cleaning the garden, cleaning windows, and being on-call for tenant requests and emergent issues.

25.     As detailed below, Gomez works, on average, approximately 50 hours per week, without being paid 1.5 times his regular rate of pay for overtime work.

26.     Gomez' effective hourly rate of pay is less than the applicable New York minimum wage rate.

**Gloria Lopez:**

27.     Lopez is an adult, natural person who resides in the City of New York, County of Kings and State of New York.

28.     Lopez, who lives with Gomez and is his partner, works as Gomez' helper.

29.     Typically, Lopez works two hours per day, six days per week, for an average work schedule of twelve (12) hours per week.

30.     Notwithstanding Lopez' foregoing work, of which Defendants are well aware, Defendants pay Lopez no compensation.

31.     Instead, Gomez and Lopez effectively share Gomez' weekly pay of $525.00.

32.     Therefore, Lopez is owed compensation for all hours she worked at the applicable New York minimum wage rate.

**Mordechai Spira a/k/a Mike Spira:**

33.     Spira is an adult, natural person who upon information and belief, resides at 2000 New York Avenue, Brooklyn, New York.

34.     Upon information and belief, Spira maintains a principal place of business at the 16th Avenue Office.

35.     Upon information and belief, Spira also maintains a place of business at 2071 Flatbush Avenue, No. 48, Brooklyn, New York.

36.    Upon information and belief, Spira utilizes multiple aliases, for example, on the mortgage dated March 20, 2020, encumbering 180 Linden Blvd., Brooklyn, New York, Spira signed his name ("Mordechai Spira") as "Managing Member" of the building's title owner, 180 Linden Owners LLC.  But on eviction notices to tenants and eviction petitions for the same building, Spira uses his alias "Mike Spira."

37.    Upon information and belief, at all relevant times, Spira was (and he continues to be) the most senior executive of the Title-Holding Entities, Investment Entities and the Management Entities that comprise the Spira Enterprise, through which the Spira Enterprise invests in, owns and controls the Spira Buildings.

38.    During the time periods relevant to this Complaint, Spira was the managing member or senior executive of the Title-Holding Entities and Management Entities, which exist to nominally hold title to and manage the Spira Buildings but, in fact, are under Spira's total control.

39.    Spira operates the Spira Enterprise and the Spira Buildings as alter egos of himself, and the operations of the enterprise, as well as the buildings, are deeply intertwined.

40.    For example, various Spira Buildings collectively serve as collateral for consolidated loans.

41.    For example, a mortgage/loan of $19,475,000 issued by New York Community Bank in or about May 2018 is secured by both 1531/1559 St. Johns Place and 260/266 Buffalo Avenue, Brooklyn, New York 11213.  As is the case with many of the loan and assignment documents relating to the Spira Buildings, the foregoing loan documents were signed by "Eric Miller" on behalf of the Spira Enterprise.

42.    Similarly, Spira's building at 3614-3624 Church Ave (a/k/a 250-260 East 37th Street), Brooklyn, NY is encumbered by the same consolidated mortgage as Spira's

buildings at 414-416 East 34th Street, 3612-3623 (a/k/a 630-640 East 37th Street) and 2902-2914 Cortelyou Road a/k/a 227-241 East 29th Street, Brooklyn, New York.

43.    Upon information and belief, Spira is liable for the wages of Plaintiffs and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

44.    Upon information and belief, Spira has managerial and operational control over the Spira Enterprise's financial affairs and personnel policies, including, but not limited to, matters and policies pertaining to compensation of the Spira Enterprise's employees and overtime policies.

**Individual Defendant, Albert Benarroch a/k/a Albert Benarosh and a/k/a Albert Abraham and a/k/a Abraham Albert**

45.    Upon information and belief, Benarroch is an adult, natural person who, upon information and belief, resides in Kings County, New York and/or Sullivan County, New York.

46.    Upon information and belief, Benarroch maintains a principal place of business at the 16th Avenue Office.

47.    Upon information and belief, Benarroch also maintains a place of business at 2071 Flatbush Avenue, Brooklyn, New York.

48.    Upon information and belief, at all relevant times, Benarroch was (and he continues to be) a senior executive, officer and/or senior manager of entities that comprise the Spira Enterprise.

49.    Upon information and belief, Benarroch utilizes multiple aliases. Solely by way of example, documents filed by Defendants with government agencies and courts describe Benarroch as the Managing Agent of the Spira Enterprise's buildings at 2215 Newkirk Avenue, Brooklyn; NY; 2220 Amsterdam Avenue, New York, NY; 28 St.

Nicholas Place, New York, NY; and 26 St. Nicholas Place, New York, NY.    In the foregoing documents, Benarroch is typically referred to by his alias "Abraham Albert."

50.    Upon information and belief, Benarroch is liable for the wages of Plaintiffs and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

51.    Upon information and belief, Benarroch, jointly with Spira, exercises managerial and operational control over the Spira Enterprise's personnel policies, including, but not limited to, matters and policies pertaining to compensation of the Spira Enterprise's employees and overtime policies.

**Steve Spera:**

52.    Upon information and belief Spera is an adult, natural person who, upon information and belief, resides in Kings County, New York.

53.    Upon information and belief, Spera maintains a principal place of business at the 16th Avenue Office.

54.    Upon information and belief, Spera also maintains a place of business at 2071 Flatbush Avenue, Brooklyn, New York.

55.    Upon information and belief, at all relevant times, Spera was (and he continues to be) a senior executive, officer and/or senior manager of entities that comprise the Spira Enterprise.

56.    Upon information and belief, Spera is liable for the wages of Plaintiffs and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

57.    Upon information and belief, Spera, jointly with Spira, exercises managerial and operational control over the Spira Enterprise's personnel policies, including, but not

limited to, matters and policies pertaining to compensation of the Spira Enterprise's employees and overtime policies.

**Carroll Flats LLC:**

58.　　Upon information and belief, Carroll Flats is a corporation organized and existing under the laws of the State of New York.

59.　　Upon information and belief, Carroll Flats acquired title to 1730 Carroll pursuant to a deed dated May 21, 2005 that was recorded with the New York City Department of Finance on or about January 24, 2006.

60.　　Upon information and belief, Carroll Flats maintains its principal place of business at 5014 16th Avenue, Suite 191, Brooklyn, New York.

61.　　Upon information and belief, Carroll Flats maintains an office for the conduct of business at 2071 Flatbush Avenue, No. 48, Brooklyn, New York.

**DEFENDANTS' OPERATION AS A UNIFIED REAL ESTATE ENTERPRISE**

62.　　The Spira Enterprise operates as a centrally-managed real estate enterprise, under common direction and control.

63.　　The Spira Enterprise's intertwined operations and unified ownership of the Spira Buildings is reflected in records filed by and/or on behalf of the Sira Enterprise with the New York City Department of Finance, Civil Court of the City of New York and New York City Department of Housing Preservation and Development ("HPD").

64.　　The Spira Enterprise exercises ownership and control of the Spira Buildings through a series of limited liability companies, all controlled by Spira, which nominally hold title to the Spira Buildings.

65.　　Upon information and belief, Defendants: (a) use the same telephone number as the point of contact for most, if not all, of the Spira Buildings; (b) in their registrations filed with HPD, list Joe Gugenhime a/k/a Joel Guggenheim (one of the Spira

Enterprise's managers), Albert Abraham or Steve Spera as managing agents of the Spira Buildings.

## CLASS ACTION AND COLLECTIVE ACTION ALLEGATIONS

66.     Gomez brings this action in his individual capacity and as representative of: (a) an FLSA collective for unpaid overtime compensation; and (b) a R. 23 class for unpaid minimum wages and overtime under the NYLL.

67.     Lopez brings this action in her individual capacity and as representative, together with Gomez, of a R. 23 class for unpaid minimum wages under the NYLL.

*FLSA Collective  - Overtime Violations:*

68.     The FLSA Collective refers to all persons who are, or have been, employed as superintendents and maintenance workers at the Spira Buildings (the "FLSA Collective Plaintiffs") from three (3) years prior to this action's filing through the date of the final disposition who elect to opt-in to this action.

69.     This action claims that Defendants violated the overtime provisions of the FLSA by depriving Gomez, as well as others similarly situated to Plaintiffs, of their lawful overtime wages.

70.     Upon information and belief, there are many similarly situated current and former superintendents and maintenance workers of Defendants who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join this lawsuit.

71.     At all relevant times, Defendants are aware and have been aware of the requirements to pay Gomez and FLSA Collective Plaintiffs one and one-half times their regular rates of pay for all hours worked each workweek above forty.   However, Defendants purposely chose not to do so.

72.     The FLSA Collective Plaintiffs are readily ascertainable, such information being in the possession and control of Defendants.

*The New York Class – Rule 23 Class Allegations (Minimum Wages):*

73.     The New York Class refers to all persons who are, or have been, employed as Superintendents, Porters and maintenance workers at the Spira Buildings on or after the date that is six years before the filing of the Complaint in this case and the date of final judgment in this matter as defined herein.

74.     The Rule 23 Class Members ("New York Class") are readily ascertainable. The number and identity of the Rule 23 Class Members are determinable from the records of Defendants.  The positions held, and nature and extent of certain unlawful deductions from wages are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants, as well as from publicly-filed records showing the addresses of the Spira Buildings where the putative members of the New York Class are employed. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

75.     The Defendants, their officers, and directors are excluded from the Classes, as well as all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

76.     This action has been brought and may properly be maintained as a class/collective action under Fed.R.Civ.P. Rule 23 and 29 U.S.C. §216 because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable.

(a) Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the classes are so numerous that joinder of all members is impractical, if not impossible.  Membership in the

Plaintiff Classes will be determined upon analysis of employee and payroll records, among other records maintained by Defendants.

(b) Commonality: The Representative Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, thereby making a class action superior to other available methods for the fair and efficient adjudication of the controversy. Consequently, class certification is proper under Fed.R.Civ.P. Rule 23(b)(3) and 29 U.S.C. §216(b). For example, the Spira Enterprise's practice and policy of failing to comply with New York Labor Law requirements pertaining to wage notices and pay statements, as alleged above, applies to all members of the New York Class, and the relief demanded (including, *inter alia*, the demand for injunctive and declaratory relief) affects the entire class. Similarly, the Spira Enterprise's policy and practice of unlawful deductions from Superintendents' wages is applicable class-wide and involves common legal and factual issues.

(c) Typicality: The Representative Plaintiffs' claims are typical of the claims of the Plaintiff Classes. The Representative Plaintiffs and all members of the Plaintiff Classes sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of state and federal law, as alleged herein. All of the Rule 23 Class Members were subject to the same corporate practices of Defendants of failing to pay minimum wage and overtime compensation; unlawful wage deductions; violations of NYLL §195(3) by failing to issue wage statements to employees in the primary language of employees that correctly identified the name of the employer, address of employer, rates of pay or basis thereof, regular hourly rate, number of overtime hours worked; and violations of NYLL §195(1) by

13

failing to provide to employees, upon hiring, a written notice in English and the employee's primary language setting forth the employee's rates of pay and basis thereof, the name of the employer, physical address of the employer's business, names used by the employer, and other legally-mandated disclosures.

(d) <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make it, impractical for Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would create a risk of inconsistent rulings, which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. This risk is particularly applicable here, in light of the demand herein for declaratory and injunctive relief relating to NYLL § 195(1) and (3). Moreover, the Representative Plaintiffs are informed and believe, and based thereon allege, that Defendants, have acted and refused to act on grounds generally applicable to all claims, thereby making appropriate injunctive and monetary relief for all members of each class. Consequently, Class certification is proper under Fed.R.Civ.P. Rule 23(b)(2) and 29 U.S.C. § 216(b).

(e) <u>Adequacy of Representation</u>: The Representative Plaintiffs in this class action are adequate representatives of the Plaintiff Classes, in that the Representative Plaintiffs' claims are typical of those of the Plaintiff Classes and the Representative Plaintiffs have the same interests in the litigation of this case as the

Class Members. The Representative Plaintiffs are committed to vigorous prosecution of this case, and have retained competent counsel, experienced in employment litigation of this nature, who have demonstrated diligence in investigating the facts relevant to the claims of the Representative Plaintiffs and putative Class Members. The Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to the Class as a whole.

77. Upon information and belief, current employees, particularly immigrant, low-wage workers, are often afraid to assert their rights out of fear of direct retaliation or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment and future efforts to secure employment. Class actions provide Rule 23 Class Members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while reducing these risks.

## COMMON FACTUAL ALLEGATIONS

78. As described herein, Defendants have, for years, knowingly failed to adequately compensate those employees within the class definitions identified above for wages, including overtime wages due under the FLSA (29 U.S.C. §§ 206 and 207) and NYLL (Article 19); and minimum wages due under the FLSA and NYLL.

79. Defendants engaged in unlawful business practices by requiring employees to work numerous hours of overtime on a weekly basis without overtime compensation and/or failing to pay minimum wages.

80. Upon information and belief, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

81.    At all relevant times, Defendants employed and/or continue to employ Representative Plaintiffs and each of the FLSA Collective members within the meaning of the FLSA.

82.    At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each of the New York Class members within the meaning of the NYLL, §§ 2 and 651.

83.    Defendants employ employees at their places of business in the activities of an enterprise engaged in commerce, including employees handling, selling or otherwise working on goods or materials that have been moved or produced for commerce. The enterprise has an annual gross volume of sales made or business done in an amount not less than $500,000. Therefore, the employees are employed in an enterprise engaged in commerce within the meaning of section (3)(s)(1)(A) of the FLSA.

84.    At all relevant times, the Spira Enterprise and its constituent entities, were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, operating a group of more than forty-six (46) apartment buildings that are nominally titled in different corporate names but which are centrally owned and controlled by Defendants.

*Defendants Constitute Joint Employers*

85.    Defendants had the power to hire and fire Representative Plaintiffs and putative Collective and Class Members, supervised and controlled Representative Plaintiffs' and putative Collective and Class Members' work schedules and conditions of employment, determined the rate and method of paying Representative Plaintiffs and putative Class Members and maintained Representative Plaintiffs' and putative Class Members' employment records.

86.    The Representative Plaintiffs are informed and believe that at all relevant times, the constituent individuals and entities of the Spira Enterprise functioned as a unified enterprise, namely:

(a) Ultimate control of Spira Buildings is exercised by Spira;

(b) Although the Spira Buildings are titled in different corporate names through title-holding entities established by Spira solely for the purpose of nominally holding title on the Spira Enterprise's behalf, Spira has substantial ownership interests in the entities that nominally hold title to the Spira Buildings; and

(c) Buildings of the Spira Enterprise are centrally managed.

87.    In court filings with the New York City Civil Court for evictions of tenants of the Spira Buildings, Defendants use a single email address, to wit: tenant.mgmt2@gmail.com.

88.    Defendants each had either functional and/or formal control over terms and conditions of work and over the policies and practices with respect to the employment and compensation of the Plaintiffs.

89.    Defendants employed Plaintiffs within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

90.    Upon information and belief, title to the Spira Buildings is held by various corporate entities, including defendant Carroll Flats.

91.    Upon information and belief, the various, intertwined entities that comprise the Spira Enterprise operated as mere extensions of Spira, and existed in name only, by virtue of:

(a) Failing to adhere to the corporate formalities necessary to operate corporate Defendants as corporations;

(b) Defectively forming or maintaining corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c) Operating corporate Defendants for their own benefit and maintaining control over these corporations as close corporations, all as part of the same residential real estate enterprise that ultimately benefitted Spira;

17

(d) Intermingling assets and debts of their own with corporate Defendants and diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests; and

(e) Other actions evidencing a failure to adhere to the corporate form.

92. Upon information and belief, Defendants run the business of all of the Spira Enterprise as one operation, and Defendants' operations were interrelated and united.

93. Consistent with their policies and patterns or practices, Defendants harmed Plaintiffs individually, as set forth below.

**Gomez.**

94. Gomez performs maintenance, upkeep and repair work at the Carroll Street Building. From the beginning of his employment, Gomez' son-in law, Walter ("Walter") assisted Mr. Gomez.

95. Initially (from 2011 to 2013), in addition to Walter's assistance, Gomez was also assisted by a porter, whose was referred to as "Dennis."

96. However, in 2013, Dennis ceased working at the Carroll Street Building. Thereupon, Mr. Gomez' partner, Lopez, took over the responsibilities formerly handled by Dennis, an arrangement that has continued to the present time.

97. Not including time spent working on emergent issues and/or time spent on-call, at all relevant times, Gomez' work schedule at the Carroll Street Building typically involves working seven days per week, as follows: (a) Weekdays, from approximately 8:30 a.m. to 4:30 p.m.; (b) Saturdays, from 9:00 a.m. to 1:00 p.m.; and (c) Sundays, for six hours, which was required to prepare garbage and recycling. As such, Gomez worked an average of fifty (50) hours per week, excluding time spent on call and handling unexpected emergencies.

98.     Gomez begins his workdays at approximately 8:30 a.m. He begins his workday with handling garbage and recycling. Gomez performs the foregoing tasks with his partner and co-Plaintiff, Lopez.

99.     Next, Gomez sweeps the exterior areas in front of the Carroll Street Building, and sweeps hallways.  These sweeping tasks are shared among both Plaintiffs, together with Walter, whom Defendants have designated as the Carroll Street Building's Superintendent.

100.    Gomez devotes the afternoons to completing repair and other work requests, which are conveyed by Defendants' management office to Walter and/or communicated to him directly by tenants.   Because of the large size of the Carroll Street Building, these work requests often cannot be completed in the space of a single day.

101.    On Saturdays, Gomez' tasks typically involve handling the garbage and recycling, sweeping, and then attending to work requests.

102.    Gomez is paid a flat weekly wage of $525.00, which results in an effective hourly pay rate of $13.12, which is below the applicable New York minimum wage of $15.00.

103.    Gomez is not paid one and one-half times his regular rate of pay overtime hours (i.e., hours worked above the first forty hours per week).  Instead, Gomez' weekly wage ($525.00) compensates him solely for his first forty hours of work.

104.    Because Gomez is required to be on-call at all hours of the day and night, Gomez, together with Lopez, reside in a basement space that, upon information and belief, is not a registered apartment.

105.    At all relevant times, Gomez was required to use his own tools of the trade, without any reimbursement of these expenses by Defendants.

106.    Throughout most of his employment, Gomez was supervised by Benarroch.

107.    Initially, Gomez was supervised by a manager who they referred to as "Sam" and also by Spera.  But during most of their employment, Bernarroch was Gomez' supervisor.

108.    Gomez was required, as a condition of his employment, to remain on-call, and his workweek substantially exceeded forty (40) hours.  Defendants did not keep track of the number of hours Gomez worked.

109.    Gomez was repeatedly and pervasively paid substandard wages insofar as he was: (a) denied full pay for all hours worked; and (b) he was not paid for the extensive overtime hours that he worked each week. Instead, he was paid a flat sum every week, regardless of the number of hours that he worked,

**Lopez.**

110.    At all relevant times, Lopez has worked two hours per day, six days per week, for an average work schedule of twelve (12) hours per week, without receiving any compensation.

111.    Lopez began working at the Carroll Street Building in 2013, after a prior employee, Dennis, ceased working.

112.    Lopez took over certain responsibilities previously handled by Dennis, which primarily involve assisting Gomez with cleaning common areas.

113.    Throughout Ms. Lopez' employment, Defendants and their managers, including but not limited to Benarroch and Speara, were fully aware of Lopez' work, yet they did not compensate her.

114.    Lopez typically works each morning from Monday through Saturday assisting Gomez with mopping, sweeping and similar duties.

115.    During the winter, Lopez also assists with snow removal.

**AS AND FOR A FIRST CAUSE OF ACTION**
**FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.***
**(On Behalf of Gomez and the FLSA Overtime Collective)**

116.    Plaintiffs incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

117.    At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).  Defendants employed members of the FLSA Collective as superintendents, employment positions which engaged the employees in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).  At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

118.    Gomez is informed and believes, and thereon alleges, that Defendants have required, or require, the FLSA Collective Members as part of their employment to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1).  That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

119.    Indeed, in the performance of their duties for Defendants, Gomez and members of the FLSA Collective routinely worked over substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services they provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207.  The precise number of unpaid overtime hours will be proven at trial.

120.    Gomez proposes to undertake appropriate proceedings to have such FLSA Collective Members aggrieved by Defendants' unlawful conduct notified of the pendency

of this action and join this action as Plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents to joinder with the Court.

121.    Defendants' overtime violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

122.    Defendants have a policy and practice of refusing to pay overtime compensation to Gomez and other superintendents and/or individuals who performed superintendent duties but might not have been formally designated as the superintendents of the Spira Buildings where they worked.

123.    As a result of the foregoing, Gomez seeks judgment against Defendants on his own behalf, and on behalf of those FLSA Collective Members similarly situated who file written consents to joinder in this action, for all unpaid wages, including minimum wage and overtime wages owed by Defendants to Gomez and the FLSA Collective, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
### New York Labor Law – Minimum Wages and Overtime Wages
### (On Behalf of Gomez, Lopez and the New York Class – FRCP Rule 23)

124.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs, with the same force and effect, as if fully alleged herein.

125.    Defendants employed Gomez and other workers who performed superintendent duties at the Spira Buildings for workweeks longer than forty (40) hours and willfully failed to compensate them for the time worked in excess of forty (40) hours per week, at a rate of less than one and one-half (1 and ½) times the regular hourly rate, in violation of the requirements of the NYLL.

126.    Defendants also knowingly and willfully paid Gomez, Lopez and similarly-situated Minimum Wage Class Members less than the minimum wage in violation of NYLL § 652 and the supporting regulations of the New York State Department of Labor.

127.    By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law § 650, et seq.; 12 N.Y.C.R.R. § 142-2.2.

128.    Defendants have a policy and practice of refusing to pay overtime compensation to persons performing superintendent duties.

129.    As a consequence of the willful underpayment of wages, alleged above, Gomez and members of the New York Class have incurred damages thereby and the Defendants are indebted to them in the amount of unpaid overtime compensation and unpaid minimum wages and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper, including but not limited to liquidated damages, interest and attorneys' fees.

130.    Plaintiffs seek recovery of liquidated damages, attorneys' fees and costs to be paid by Defendants as provided by the NYLL.

## AS AND FOR A THIRD  CAUSE OF ACTION
### FLSA Minimum Wage Violations
### (On Behalf of Lopez, Individually)

131.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

132.    At all times relevant to this action, Defendants were Lopez' employers and employers of the putative FLSA Collective members within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

133.    At all times relevant to this action, Defendants were engaged in commerce or in an industry and/or activities affecting commerce.

134.    At all relevant times, Lopez performed duties of a porter at the Carroll Street Building.

135.    Defendants failed to pay Lopez and the putative FLSA Minimum Wage Collective members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

136.    Defendants' failure to pay Lopez at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

137.    As a result of the foregoing, Lopez seeks judgment against Defendants for unpaid minimum wages, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees.

## AS AND FOR A FOURTH CAUSE OF ACTION
**Illegal Deductions, New York Labor Law, Article 19 § 193**
**12 N.Y.C.R.R. § 2.10(a)**
**(On Behalf of Gomez and Similarly Situated Workers)**

138.    Plaintiffs incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

139.    In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Gomez and the New York Class by requiring Gomez and superintendents and maintenance workers to spend their own money on work-related expenses, including tools of the trade to complete mandated work.  This further reduced Gomez' wages below the amounts required by the NYLL and FLSA.

140.    As a result of the foregoing, Gomez seeks judgment against Defendants on his own behalf, and on behalf of New York Class Members, for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION
**Declaratory Judgment**
**(Individually and on Behalf of Class and Collective Members)**

141.    Plaintiffs, for themselves and on behalf of all class and collective members, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

142.    This action provides a ripe and justiciable case or controversy.

143.    It is just and equitable that the Court declares the rights and other legal relationships of the parties. Representative Plaintiffs, putative members of the FLSA Collective and putative members of the New York Classes are entitled a declaration that Defendants' acts are in violation of the FLSA and NYLL.

### AS AND FOR A SIXTH CAUSE OF ACTION
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**
**(Individually and on Behalf of Class and Collective Members)**

144.    Representative Plaintiffs, on behalf of themselves and all putative class and collective members, repeat and re-allege and incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

145.    The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

146.    Throughout the Representative Plaintiffs' employment with Defendants, Defendants willfully failed to provide them and the New York Class with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3).

147.    Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices**
**(Individually and on Behalf of All Class and Collective Members)**

148.    Representative Plaintiffs, for themselves and on behalf of all putative class and collective members, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

149.    Defendants failed to provide Plaintiffs with a written notice, in English and Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL 195 §(1).

150.    As a result of Defendants' failure to provide wage statements, Plaintiffs and members of the New York Class are entitled to collect from Defendants $250 per workday that Defendants' violation continues, up to $5,000.00, together with reasonable attorneys' fees, and costs of disbursements of the action, pursuant to the NYLL § 198(1-b).

**RELIEF SOUGHT**

**WHEREFORE,** Representative Plaintiffs, Everado Gomez and Gloria Lopez, on behalf of themselves and the FLSA Collective and the New York Class, respectfully request that the Court grant the following relief:

1.    Designation of this action as a collective action for unpaid overtime on behalf of the FLSA Collective members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA

claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b) and appointing plaintiff Everado Gomez and his counsel to represent the FLSA Collective Members;

2.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) for unpaid overtime and minimum wages due under the NYLL, on behalf of the New York Class members, and appointing plaintiffs Everado Gomez and Gloria Lopez and their counsel to represent the class;

3.    An order tolling the statute of limitations;

4.    That the Court declare, adjudge and decree that Defendants violated the minimum wage provisions of the FLSA as to plaintiffs Everado Gomez and Gloria Lopez;

5.    That the Court declare, adjudge and decree that Defendants violated overtime provisions of the NYLL as to Everado Gomez and the New York Class;

6.    That the Court declare, adjudge and decree that Defendants violated the minimum wage provisions of the NYLL as to Plaintiffs and the New York Class;

7.    That the Court declare, adjudge and decree that Defendants violated the overtime wage provisions of the FLSA as to representative plaintiff Everado Gomez and the FLSA Collective;

8.    That the Court declare, adjudge and decree that Defendants willfully violated their legal duties to pay overtime compensation as required under the NYLL as to representative plaintiff Everado Gomez and the New York Class;

9.    That the Court declare, adjudge and decree that representative plaintiff Everado Gomez and the FLSA Collective Members are entitled to be paid overtime for work beyond 40 hours in a week;

10.    That the Court make an award to the Representative Plaintiffs, the FLSA Collective and the New York Class of damages and/or restitution for the amount of unpaid

minimum wages and unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial;

11.    That the Court make an award to Plaintiffs and the New York Class of reimbursement for all unlawful deductions;

12.    For all other Orders, findings and determinations identified and sought in this Complaint;

13.    For pre-judgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate, under the NYLL and CPLR;

14.    For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law;

15.    Declaring that Defendants violated the notices and record keeping provisions of NYLL and WTPA;

16.    An award of statutory damages for Defendants' failure to provide accurate wage statements pursuant to NYLL § 198(1-d);

17.    An award of statutory damages for Defendants' failure to provide proper and/or accurate wage notices pursuant to NYLL § 198(1-b);

18.    A permanent injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL; and

19.    Such other relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: March 17, 2022                    **RAPAPORT LAW FIRM, PLLC**

                                         By:    ____/s/_____
                                                Marc A. Rapaport, Esq.
                                                80 Eighth Avenue, Suite 206
                                                New York, New York 10011
                                                Ph: (212) 382-1600
                                                mrapaport@rapaportlaw.com

**MILLER LAW, PLLC**

By:
/s/
_____
Meredith R. Miller, Esq.
167 Madison Avenue, Suite 503
New York, New York 10016
Ph: (347) 878-2587
meredith@millerlaw.nyc

*Attorneys for Representative Plaintiffs Everado*
*Gomez and Gloria Lopez, and Members of the*
*FLSA Collective and NYLL Class*

29