

www.millerlaw.nyc

Meredith R. Miller, Esq.

Miller Law, PLLC
167 Madison Avenue, Suite 503
New York, NY 10016

Tel: (347) 878-2587
Fax: (866) 495-6719
meredith@millerlaw.nyc

September 1, 2022

**VIA ECF**
Hon. Sanket J. Bulsara
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:   *Gomez, et al v. Carroll Flats LLC, et al.*
           **Case No. 22-cv-01493 (SJB)**

Dear Judge Bulsara:

    Together with Rapaport Law Firm, PLLC ("Rapaport Law"), we represent Plaintiffs Everado Gomez ("Gomez") and Gloria Lopez ("Lopez") (collectively, "Plaintiffs"), in the above-referenced matter, which involves claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and New York Labor Law ("NYLL") for wage and hour violations. Plaintiffs write jointly with Defendants to request that the Court approve the settlement agreement (the "Agreement") reached by the parties as a fair and reasonable resolution of this matter. The Agreement reflects a desire by the parties to fully and finally settle Plaintiffs' FLSA and NYLL claims. Plaintiffs' counsel further requests that the Court approve our attorneys' fees and costs.

    The parties participated in a private mediation with Ruth D. Raisfeld, Esq., a mediator with extensive experience in employment matters. Prior to the mediation, the parties engaged in limited, pre-mediation discovery in which the parties exchanged documents and information targeted to facilitate informed settlement discussions. The mediation was conducted remotely via Zoom. During the mediation, the parties reached an amicable resolution of the claims set forth in Plaintiffs' complaint (the "Complaint"). Thereafter, the parties drafted a formal settlement agreement, a fully executed copy of which is annexed hereto as Exhibit 1.

    Plaintiffs participated in the mediation from Rapaport Law's offices, and they were fully able to (and did) participate in the negotiations. Plaintiffs' attorneys, both myself and Marc Rapaport, were physically present in person with Plaintiffs for the entire mediation session. An interpreter participated remotely to ensure that Plaintiffs fully understood and participated in the settlement discussions. In addition, Karina Gulfo, a fluent Spanish-speaking paralegal with Rapaport Law, was physically present at Rapaport Law office, and she also ensured that Plaintiffs were able to fully understand and participate in all discussions.

    **I.**    **Introduction.**

    As Plaintiffs' claims arise, in part, under the FLSA, the Agreement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the

Honorable Sanket J. Bulsara
United States Magistrate Judge
September 1, 2022 - Page 2

totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336, (S.D.N.Y. 2012) (citations and quotation marks omitted).

## II. Summary of Plaintiffs' Factual Allegations.

The Complaint[1] alleges that defendants Carroll Flats LLC, Mordechai Spira a/k/a Mike Spira, Albert Benarroch a/k/a Albert Benarosh and a/k/a Albert Abraham and a/k/a Abraham Albert, and Steve Spera (collectively, "Defendants") own and control the 84-unit apartment building located at 1730 Carroll Street, Brooklyn, NY 11213 (the "Building"), and that each of them was a joint employer of both Defendants.

Gomez has been responsible for maintaining the building since 2011, and he continues to work for Defendants in this capacity. Despite having never been formally hired by Defendants (or being paid any wages), Gomez' partner, Lopez, has long assisted Gomez with his duties. Gomez asserts overtime claims under both the FLSA and NYLL; minimum wage claims under the NYLL; and claims for related NYLL violations. Lopez asserts claims for minimum wages under both the FLSA and NYLL and claims for related NYLL violations.

As discussed in further detail below, both Plaintiffs would each face challenges if their claims were to proceed to trial. Gomez would face the risk that Defendants might succeed in establishing their affirmative defense arguing that Gomez is exempt from overtime under the NYLL's "janitor exemption." With respect to Lopez, Defendants aver that they were unaware that she had performed any work at the Building. On this basis, Defendants argue that Lopez never had the status of Defendants' employee. Plaintiffs dispute Defendants' foregoing contentions. But Plaintiffs are aware that Defendants' arguments present risks, which were carefully evaluated and weighed by Plaintiffs in considering the sufficiency of the settlement amount, as well as how the settlement is apportioned between them.

**Gomez:**

Gomez' duties at the Building involved (and continue to encompass) general maintenance, cleaning, sweeping, separating and removing garbage and recyclables, and light repair work. He has held this position at the Building since 2011. His duties were generally comparable to the responsibilities of a residential building superintendent. The Complaint describes, in detail, Gomez' duties, and also provides a breakdown of how Gomez spent his typical workdays. Compl.

---

[1] The action was fashioned as a collective and class action covering workers at Defendants' portfolio of buildings, but Plaintiffs have agreed to settle their respective claims on an individual basis.

Honorable Sanket J. Bulsara
United States Magistrate Judge
September 1, 2022 - Page 3

¶¶ 94 – 102. Gomez typically worked approximately 50 hours per week. Compl. ¶ 97.[2] With limited exceptions, at all relevant times, he was paid a flat weekly salary of $525.00. Compl. ¶ 102.

The bulk of Gomez' damages are based on Defendants' failure to pay him premium overtime compensation (at 1.5 times his regular rate of pay) for all hours of work above forty per week. Plaintiffs' calculation of Gomez' estimated overtime damages is based on the rebuttable presumption in the Second Circuit that a fixed salary covers 40 hours. *See, e.g., Perez v. Platinum Plaza 400 Cleaners, Inc.,* No. 12-cv-9353, 2015 U.S. Dist. LEXIS 54066, *6-7 (S.D.N.Y. Apr. 24, 2015); *Keun-Jae Moon v. Gab Kwon,* 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002); *Giles v. City of New York,* 41 F. Supp. 2d 308, 316-217 (S.D.N.Y. 1999). If Defendants were to overcome the foregoing presumption, the amount of Gomez' potential overtime damages would be significantly lower.

Based on the foregoing, Plaintiffs calculated Gomez' unpaid overtime and minimum wages, as follows:

3/20/16 through 12/31/18:

(a) effective, regular hourly rate of pay: $525.00 ÷ 40 hours = $13.13;
(b) effective overtime rate: $13.13 x 1.5 = $19.69;
(c) unpaid overtime per week: $19.69 x 10 hrs. = $196.69;
   **Unpaid Overtime: $28,743.76**

1/1/19 through 3/13/22:

(a) effective overtime rate: $22.50[3]
(b) unpaid overtime per week: $22.50 x 10 hrs. = $225.00;
(c) Unpaid Minimum Wages (NYLL): $1.88 per hour/$75.00 per week.
   **Unpaid Overtime & Minimum Wages: $34,500.00**

The foregoing amounts do not include liquidated damages. In advance of mediation, Plaintiffs' counsel prepared a week-by-week damages spreadsheet for both Plaintiffs, a copy of which is attached hereto as Exhibit 2. This spreadsheet was provided to Defendants' counsel prior to the mediation. In addition, Gomez could potentially recover $10,000 for Defendants' failure to comply with the NYLL's wage notice and wage statement provisions. In addition, if this matter

---

[2] There are no accurate records of the hours worked by Plaintiffs. If this case were to proceed, both Plaintiffs would establish their hours worked through their testimony.
[3] This is based on the applicable minimum wage of $15.00, applicable to large employers in New York City since 2019.

Case 1:22-cv-01493-SJB   Document 23   Filed 09/01/22   Page 4 of 9 PageID #: 88

Honorable Sanket J. Bulsara
United States Magistrate Judge
September 1, 2022 - Page 4

were to proceed to trial, the possibility of liquidated damages and pre-judgment interest could substantially increase the amount of damages.

### Lopez:

Lopez alleges that she began performing maintenance work at the Building in 2013, after the departure of the Building's former porter. Compl. ¶ 111. Lopez alleges that she worked two hours per day, six days per week, for an average work schedule of twelve hours per week. Compl. ¶ 110. Defendants paid no compensation to Lopez. Instead, Gomez and Lopez effectively shared Gomez' weekly pay. Therefore, Lopez is owed compensation for all hours she worked at the New York minimum wage rates applicable to large employers in New York City that were in effect during the six years preceding the commencement of this lawsuit. As shown by Plaintiffs' damages spreadsheet, as these minimum wage rates increased, so too did Lopez' damages. *See* Exh. 2. If Lopez were to succeed in establishing that she worked twelve hours every week (and that Defendants were aware of, and consented to, her employment), she could potentially recover $49,596.00 in unpaid minimum wages.

Lopez faces the risk of a trier of fact concluding that she was not Defendants' employee. In at least two prior cases, judges in this District have addressed the question of when a superintendent family member qualifies as an employee based on work they performed without pay. The test articulated is fact-intensive. In *Draskovic v. Oneota Assocs., LLC*, No. 1:17-CV-5085 (ARR) (JO), 2019 U.S. Dist. LEXIS 28017, at *26 (E.D.N.Y. Feb. 21, 2019), which canvassed relevant decisions, the court held that there was an issue of fact regarding whether a superintendent's wife was employed by defendants. The court based its holding, in part, on plaintiffs' contention that her husband could not have performed these duties because "he was simultaneously occupied performing other work for the defendants." *Id.* On this basis, the Court held that the circumstances were distinguishable from those in *Figurowski v. Marbil Inv'rs, LLC*, No. 14-CV-7032(JS)(AKT), 2018 U.S. Dist. LEXIS 54756, at *27 (E.D.N.Y. Mar. 30, 2018), where the court held that a superintendent's wife was not defendants' employee, despite having assisted her husband with his duties. In light of the foregoing, Plaintiffs cannot completely dismiss the possibility that Lopez' claims may fall short.

### IV. Defendants' Defenses

### Gomez:

Defendants maintain that Gomez overstates his claimed hours worked throughout his employment and that he was paid for all the hours worked. Defendants contend that Gomez is unlikely to establish his claim that he worked 50 hours per week. Defendants also maintain that Gomez' overtime claims are precluded by the NYLL exemption pursuant to 12 NYCRR Part 141-3.4 (commonly known as the "janitor exemption"). The janitor exemption allows employers in the building service industry to designate one person as a residential building as the "janitor." Specifically, pursuant to the Building Services Wage Order and well-established case law, the regulations "do not provide for either minimum wages or overtime wages for "janitors," who are instead paid based on the number of units in the building in which they worked. 12 N.Y.C.R.R. § 141-1.4; *see Niemiec v. Ann Bendick Realty*, 2007 WL 5157027, at *4 n. 6 (E.D.N.Y. Apr. 23,

2007); *Koljenovic v. Marx*, 999 F. Supp. 2d 396, 399 (E.D.N.Y. Feb. 6, 2014) (holding building superintendents were exempt from New York Labor law minimum and overtime wage requirements under the janitor exemption). "Instead of requiring an hourly minimum wage and overtime premium, New York requires employers in the building service industry to pay janitors in residential buildings a weekly minimum based on the number of units in the buildings, subject to a cap." *Llolla v. Karen Gardens Apartment Corp.*, 2014 WL 1310311, at *10 (E.D.N.Y. Mar. 10, 2014) (citing 12 N.Y.C.R.R. §§ 141-1.2, -2.8), *adopted in relevant part by* 2014 WL 1311733 (E.D.N.Y. Mar. 28, 2014); *Draskovic v. Oneota Associates, LLC*, 2019 WL 783033, at *14 (Feb. 21, 2019) (same). Under the exemption, the designated janitor must only receive a weekly minimum, which is set forth in applicable wage order and is based either on the number of units in the building or a minimum set by the New York State Department of Labor. The designated janitor is also exempt from the overtime requirements set forth in the NYLL. If the janitor exemption applies, Gomez is only able to recover overtime under the FLSA, which reduces the statute of limitations by at least half.

### **Lopez:**

Defendants deny they ever employed Lopez. Defendants further contend that they were unaware that Lopez was working at the Building, and that they never requested nor had any knowledge that she performed any work. If Gomez enlisted Lopez to assist him at the Building, this was never reported to Defendants. Plaintiffs also did not produce to Defendants any records or information to demonstrate that Lopez was employed by Defendants (including compensation records or any communication with Defendants to show any indicia of employment). Instead, Defendants argue that any work allegedly performed by Lopez was performed voluntarily, unknown to Defendants, and not under the direction and control of Defendants, but at the request of Lopez.

Defendants deny wage violations and contend that if there were any such violations, they would not warrant liquidated damages because Defendants believed in good faith that they were in compliance with the law.

### **V. The Agreement is Fair and Reasonable.**

The parties represent to the Court that the settlement between the parties is a voluntary, fair, and reasonable resolution of a *bona fide* dispute reached as a result of a mediation session with an experienced mediator. The Agreement is the product of challenging negotiations that lasted a full day.

As reflected in the attached Agreement, the parties have agreed to settle the case with a payment to Plaintiffs (inclusive of legal fees and costs) totaling $76,400.00. After attorneys' fees and costs, Plaintiffs receive payments totaling $50,080.73. The settlement amount is fair and reasonable in light of the uncertainties that Plaintiffs face, including the challenge of establishing the number of hours they worked. *See Beckert v. Rubinov*, 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he

identifies ($114,700)"). There are also challenges and uncertainties associated with establishing that Defendants were aware that Lopez was working at the Building. We also believe the settlement amount is fair because it takes into account the risk that Gomez' NYLL minimum wage and overtime claims may fail as a result of the janitor exemption.

The parties exchanged informal discovery for the purposes of the mediation, but were able to reach an agreement before incurring the costs of significant discovery, depositions, motion practice and trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016) (citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiffs could be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial.

We believe that the allocation of the proceeds as between Gomez ($38,564.58) and Lopez ($11,516.15) is fair because of the risks associated with each of their cases. In particular, Lopez faces a significant hurdle in proving that Defendants employed her. Defendants claim that they were unaware that she performed any work at the Building, and further dispute that she possibly did so for an average of twelve hour per week. If a trier of fact determines that Lopez did not have the status of Defendants' employee, her claim would completely fail. In contrast, even if Gomez' NYLL claims fail due to the janitor exemption, his FLSA claims would survive. Moreover, Gomez has compelling arguments that he is not covered by the janitor exemption, including the fact that his son-in-law, who also worked in the Building, was the individual whom Defendants formally designated as the Building's janitor.

Gomez and Lopez have both discussed and agreed to this allocation.

The non-monetary provisions of the Agreement do not run afoul of *Cheeks*. The Agreement does not contain a general release. Nor does it contain a confidentiality clause. The Agreement's non-disparagement provision is mutual. Agreement Art. 10. Moreover, the foregoing provision explicitly does not prohibit Plaintiffs "from making truthful statements about their experiences litigating this case or working for Defendants." *Id.* Courts have held that mutual non-disparagement provisions that contain a carve-out allowing truthful statements are permissible under *Cheeks*. *E.g., Macuku v. Mill-Run Tours, Inc.*, No. 21-CV-2505 (OTW), 2022 U.S. Dist. LEXIS 99784, at *6 (S.D.N.Y. June 3, 2022); *Jimenez v. Victory Hosp. Mgmt. LLC*, No. 20- CV-2590 (LB), 2021 U.S. Dist. LEXIS 256574, at *4 (E.D.N.Y. Apr. 1, 2021).

Article 18 of the Agreement contains an acknowledgment by Lopez that upon her signature of the Agreement, she is not Defendants' employee, and she will not perform work at the Building unless she is hired by Defendants. Given the particular circumstances of this case, the foregoing provision is appropriate, and it provides needed clarity to all of the parties. Notably, there is no prohibition on reemployment – a provision that would be inconsistent with *Cheeks*. It expressly provides, "this provision does not prevent Plaintiff Lopez from seeking employment with the Company." The language in Article 18 is intended to protect *all* of the parties: Lopez will not be placed in the position of performing work without compensation; and Defendants are protected from unexpected allegations that Lopez has performed work without their knowledge. In light of

Honorable Sanket J. Bulsara
United States Magistrate Judge
September 1, 2022 - Page 7

the fact that Plaintiffs will both continue to live in the Building, and Gomez' employment will continue, the Agreement's clarification of Lopez' status serves a specific, legitimate purpose.

### III. Application for Attorneys' Fees.

Under both the FLSA and NYLL, Plaintiffs are entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiffs' counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012).

Plaintiffs' counsel is seeking $26,319.27 in combined disbursements and legal fees ($1,652.65 for disbursements, and $24,666.62 in legal fees). This represents a contingent legal fee of 33% of the net value of settlement ($76,400.00 - $1,652.65 = $74,747.35 x 33%). This percentage is the amount of the contingency fee provided by Plaintiffs' retainer agreement with counsel (Exhibit 3), which provides for legal fees of 33% of the net recovery.

Rapaport Law requests reimbursement for costs/disbursements in the amount $1,052.65, which is largely attributable to filing fees and costs for service of process. Miller Law, PLLC ("Miller Law") requests reimbursement of $600.00, which was the interpreter's fee for the mediation session. All of these expenses were reasonable and necessary for the prosecution of Plaintiffs' claims. Proof of the foregoing costs/disbursements are readily available should the Court deem them helpful to evaluate this application.

Contingency fees of one-third are routinely approved in this Circuit. *Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y. Oct. 25, 2017); *Gaspar v. Personal Touch Moving, Inc.*, No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015).

The percentage method is the preferred method in this Circuit; however, the lodestar method is used as a "cross-check" to ensure that the amount is not unreasonable. *Chen*, 2021 U.S. Dist. LEXIS 189942 *17-18 (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) and (*Beckman v. Keybank*, N.A., 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (granting attorneys' fees where award was 6.3x the lodestar amount)).

Rapaport Law's time spent on this matter and the expenses reasonably incurred are set forth in the accurate, detailed and contemporaneous records attached hereto as Exhibit 4. Similarly, Exhibit 5 is the history bill of Miller Law.[4]

Our hourly rates set forth in the attached history bills are consistent with the rates that have been approved by courts in the Southern and Eastern Districts in similar FLSA cases (including in cases handled by Rapaport Law and Miller Law). The attached history bill shows a combined, total lodestar of $30,200.00, which is less than the $24,666.62 in requested fees. Though the requested fee here is only about 80% of the lodestar, it is worth noting that Courts have approved fees that

---

[4] The fact that the requested attorneys' fees are split between Rapaport Law and Miller Law does not affect the amount of fees requested. Plaintiffs' counsel worked jointly on this case, as they have on dozens of other cases. The total amount of fees requested remains 33%.

exceed and even double the lodestar. *See Castillo v. Cranes Express, Inc.*, No. 18-cv-1271, 2018 WL 7681356 *5 (E.D.N.Y. Dec. 12, 2018) (approving one-third contingency fee that was 1.26 lodestar multiplier); *see also Munecas v. Bold Food, LLC,* No. 09 Civ. 00440 (DAB), 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."); *Sakiko Fukiwara v. Sushi Yasuda Ltd*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("[A] multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.").

The lodestar reflects a billing rate of $400/hr for attorneys Meredith R. Miller (Miller Law) and Marc Rapaport (Rapaport Law); and $115/hr for Karina Gulfo, a paralegal at Rapaport Law. These hourly rates for attorneys have been held to be reasonable in the Eastern District of New York. *See Garcia v. SBKU Services Inc.,* No. 17-cv-3130, 2021 WL 1394480 (E.D.N.Y. Feb. 25, 2021) (prevailing rates range from $300 to $400 for experienced attorneys) (citations omitted); *see also Montalvo v. Arkar, Inc*., No. 17-cv-6693, 2018 U.S. Dist. LEXIS 79667 (S.D.N.Y. May 10, 2018) (approving our requested hourly rate of $400 per hour in FLSA case).

The attorneys and staff at Rapaport Law and Miller Law who were involved in this case, and whose time is reflected in the attached billing records, are:

1. **Marc Rapaport**

Since 1995, Mr. Rapaport is the managing member of Rapaport Law. He has more than twenty years of experience litigating employment matters on behalf of employees in New York. He received a J.D. from Georgetown University Law Center in 1992. Thereafter, he worked as a Staff Attorney for the United States Department of Justice in Washington, D.C. He represents employees in a broad range of discrimination and wage/hour matters. He is an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York. He believes that his clients also benefit from his broader experience beyond the field of employment law, including his experience litigating commercial disputes in state and federal courts.

For more than 25 years, he has represented immigrant workers who often find it difficult to obtain skilled legal representation. In recent years, he has particularly focused on representing immigrant workers in the building service and construction industries, which have included, by way of example, the following matters: *Armas et al. v. SKYC Management LLC et al.*, SDNY 2014 CV 6360 (PGG)(HBP); *Castillo et al. v.140 Ash Associates, LLC, et al.*, EDNY 16-cv-5216 (FB)(PK); and *Salas et al. v. Phoenix ACV Construction Services, LLC et al.*, SDNY 16-cv-08066. Recently, in the matter *Contrera, et al. v. Langer, et al,* SDNY, 16-cv-3851, Mr. Rapaport and I served as co-counsel and reached a substantial overtime settlement on behalf of a class of over 600 building superintendents, porters and handymen.

2. **Meredith R. Miller (Miller Law, PLLC; of counsel to Rapaport Law Firm, PLLC)**

I have served as Of Counsel to Rapaport Law for more than seventeen years. I received a J.D. from Brooklyn Law School in 2000. Thereafter, I started my legal career in Albany, clerking

for the New York Court of Appeals. I then served as a litigation associate at Proskauer Rose, LLP in New York City. In 2004, I accepted a teaching fellowship at Temple Law School in Philadelphia, which began my career as a law professor. Since 2006, I have taught contracts, business and employment law at the Touro University, Jacob D. Fuchsberg Law Center in Long Island, New York. I have written and lectured extensively on these subjects. Additionally, I have served as co-counsel with Mr. Rapaport on well over a dozen wage cases representing immigrant and low-wage workers.

### 3. Karina Gulfo

Ms. Gulfo has been a paralegal at Rapaport Law since August 2018. She graduated from John Jay College of Criminal Justice in 2021 and is now pursuing a graduate degree. Prior to joining the firm, Ms. Gulfo worked as a legal assistant for a civil rights and criminal defense law firm in the Bronx for four years.

Ms. Gulfo speaks fluent Spanish. Because of her language skills, Ms. Gulfo served a crucial and effective role in our representation of Plaintiffs. Ms. Gulfo has performed FLSA damage calculations in multiple FLSA/NYLL cases since she joined Rapaport Law. A substantial portion of Ms. Gulfo's responsibilities involve client communications, damages analysis, and case management in FLSA matters. Ms. Gulfo is a primary point of contact for the firm's clients.

\* \* \*

We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to discuss them. The parties thank the Court for its attention to this matter.

Respectfully yours,

Meredith R. Miller

Encs.

cc:  All Counsel of Record (*Via ECF only*)